HEARD APRIL TERM, 1876.

## ZEIGLER *vs.* THE NORTHEASTERN RAILROAD COMPANY.

A railroad train, when crossing an ordinary public highway is not bound, unless special circumstances exist making it necessary, to slacken their ordinary speed, and is, therefore, not chargeable with negligence because they did not slacken it.

BEFORE REED, J., AT CHARLESTON, APRIL TERM, 1875.

This is a new trial of the same case reported in 5 S. C., 221.

The action was to recover damages for negligently running the defendant's train against a wagon in which the plaintiff was riding, breaking the wagon and killing the horse that was drawing the same and injuring the plaintiff. The accident occurred at a place near the city of Charleston, where the defendant's track crosses the public highway, along which the plaintiff was riding in a covered wagon.

The case prepared for this Court set forth in full the evidence given on behalf of the plaintiff and then proceeded as follows:

The defendant, by his counsel, then moved for a nonsuit, on the ground that plaintiff had proved his own negligence, and therefore cannot recover.

The Court refused the motion, and defendant excepted to the ruling. The defendant, by his counsel, then opened his case to the jury. The defendant, then, to maintain the issues on its part,

introduced evidence going to show that the accident was not due to negligence of defendant, and that plaintiff was guilty of negligence producing the result.

The cause was then summed up by the respective counsel, and the counsel for the defendant prayed the Court that the following instructions be given to the jury :

1. That the railroad company is by law entitled to the use of its track for the purpose of running its trains, at a reasonable rate of speed, under its charter.

2. That in the absence of special circumstances making it necessary, it is under no legal obligation to stop its engine and trains at the crossing of public highways.

3. That travelers on the highway are bound, on approaching a point where a highway crosses a railroad, to look out and to listen for trains that may be at any time approaching, and persons driving vehicles are bound to stop before setting foot upon the railroad track, unless they have ascertained by the use of all their senses that no train is near.

4. That an accident by collision between a vehicle on the highway and a train on the railroad is of itself proof of the necessity of so stopping the vehicle.

5. That neglect by the plaintiff of ordinary care debars the plaintiff from claiming damages from defendant.

6. That the admission of plaintiff that he did not look out from beneath his covered wagon or stop to listen is proof of such neglect in the case.

7. That plaintiff in order to recover must prove *both* that defendant was guilty of negligence in the use of its track, and also that the plaintiff was clear of neglect on his part contributing to the accident.

The Court declined to charge the instructions, to which defendant excepted.

The Court then charged the jury as follows:

This action is brought by the plaintiff, Gustavus H. Zeigler, against the Northeastern Railroad Company to recover damages for injury done to his person and property by the defendants, which he alleges occurred several years ago. A great deal of law,

both American and English, has been read to you by counsel, in which there appears to be very considerable conflict; but in making the application of the law to the facts of the case, it will be necessary to govern ourselves by the decision of the Supreme Court of this State, and, as far as it is applicable, it is the law of the case. It seems that on the former trial the presiding Judge charged the jury that the railroad company was liable in any event for whatever damages had occurred.

The Supreme Court say: "The proposition submitted by the charge of the Circuit Judge was that a railroad company is responsible for injuries done to persons and vehicles while passing along a highway, at a point where the track of the railroad crosses such highway, in consequence of being struck by a locomotive belonging to such railroad company, running in the course of its ordinary and lawful business, and under the management and control of its servants, even though such injury was the result of accident alone, without negligence or fault on the part of such company or its servants.

"The case of *Danner* vs. —— R. R., (4th Richardson, 329,) while carrying the liabilities of railroad companies in cases of injury to persons other than passengers to the fullest point reached in this country, yet concedes that no such liability results as a consequence of mere accident alone."

It is charged in the complaint, that on the 22d day of December, 1870, while the plaintiff was traveling in a wagon drawn by one horse along the public highway leading into the city of Charleston, which public highway crossed the railroad at a place called the crossing of the Meeting street road, near the place known as the forks of the road, and as the plaintiff had reached said crossing, defendants carelessly and negligently caused one of their locomotives with a train of cars attached thereto to approach said crossing and then and there to pass rapidly over the track of the said railroad, by which means the plaintiff was injured. The railroad company deny the charge as alleged in the complaint.

This decision goes on to say: "It appears from the record before us that the evidence submitted to the jury bore on the question of negligence alone. That of the plaintiff tended to establish negligence on the part of the defendants, and that of the defendants to refute the charge of negligence as against themselves and to establish it on the part of the plaintiff. It was for the jury to say what

force this evidence was entitled to receive in its bearing on the issue of negligence presented by the pleadings."

I charge you, gentlemen, that it is for you, from the evidence before you, to determine that issue.

The Court continues : "The Circuit Judge was called upon by the nature of the pleading and evidence simply to state the law applicable to a case of alleged negligence. To submit, under such circumstances, the proposition that liability ensued though negligence was not proved, was not only an error in point of law but one operating necessarily to the prejudice of the defendants.

"It remains to consider whether the language of the charge supports the conclusion already stated as to its character. The charge holds that, notwithstanding signals and warning of the approach of the locomotive may have been given, yet if the plaintiff did not see them or hear them, in the absence of proof that such failure to see and hear them was the result of negligence on his part, the company is responsible. This proposition virtually holds that plaintiff may recover -although negligence is not imputable to the defendants. In other words, it renders the defendants responsible for mere accident alone, without intermixture of fault on their part or that of their servants.

"The charge assigns as the reason of this rule that the defendants were bound to slacken their speed, so as to prevent an accident occurring. This assumes that there was a legal obligation to slacken the speed of the train at the time and place of the accident. There was no such legal obligation. If they were bound to slacken their speed at that time and place, it was because special circumstances existed rendering that course necessary under the rule of law imposing due and ordinary care upon the defendants.

"As to the existence of such a necessity, it was the province of the jury to determine as matter of fact."

The Court say that there is no legal requirement which compelled the railroad company to stop their train at that point or anywhere else, or even that they should blow a whistle or ring a bell. But they are bound to run their trains with such care that if, by their neglect, persons or property be injured, they will be held responsible ; which care is to be exercised to a greater or less extent, according to the location and the particular surroundings. More care is necessary to be exercised in passing a public street of the city of Charleston or a public highway near the city than is

necessary in the country, where but few persons are accustomed to pass.

"Again, the charge holds that it was not necessary for the plaintiff to look out for the train. There is no rule of law absolving a person from looking for the train. He is bound to use ordinary care, and that involves a reasonable use of all his senses."

I charge you that it was incumbent on the plaintiff to make proper use of his senses and use ordinary care upon his part, not only to protect himself, but to avoid any obstruction of defendant's train which might involve the loss of both life and property.

The Court continues: "We must, therefore, conclude that the rule submitted to the jury tended to render the defendants responsible, though the injury was the result of an accident alone.

"It is contended by the appellants that the charge that the defendants were responsible for great care is inconsistent with the rule of ordinary care by which railroad companies are bound under such circumstances. This passage is certainly obscure in this respect.

"It is true that in applying the rule of ordinary care the actual amount of care required under the facts of any particular case is varied according to whether the instrument occasioning damage is readily controllable or in its nature dangerous. So that, in one sense, greater care is demanded from one who runs a locomotive engine than from one who drives a cart."

That is perfectly natural and reasonable, and it is for you, gentlemen, to determine whether there was reasonable care on the part of the plaintiff or defendants, or whether there was negligence with both.

"The rule of ordinary care is, however, equally applicable to both, but must be applied with reference to the nature of the instrument involved. Taking the portion of the charge just considered in connection with the other portions already referred to, and it is clear that if it placed before the minds of the jury an erroneous view of the law of the case it would have been scarcely more erroneous had it charged that the liability of the defendant was that of insurers against accident occurring through want of care on the part of the plaintiff."

Thus, gentlemen, you have the law of this case as laid down by our Superior Court, and if, from reviewing the testimony, you are satisfied the defendants were guilty of negligence in running their

train, whereby the injury complained of happened, then your verdict will be for the plaintiff.

But if, on the other hand, you are satisfied they were using reasonable care and diligence to prevent accidents, you will find for the defendants.

The locality of the occurrence is well known to you. The plaintiff states that he had driven up above the Three Mile House on business, and upon returning stopped at that establishment and took up some passengers who had been attending a cock fight; that on approaching the railroad track in an ordinary trot, he did not look to the rear because of the attention necessary to the management of his horse; he heard no bell, but some one in the rear end of the wagon called attention to a bell, and another of his companions remarked that it was possibly the bell of the Phosphate Works. Was that circumstance sufficient to put plaintiff on his guard? He said he heard no whistle until his wagon was struck by the train, when, of course, it was too late.

Was any whistle blown? The engineer testified that at a point six or eight hundred yards above was a signal post where he was required by the rules of the company to blow his whistle, and added that he did so and moved on down the track at a rate of speed not exceeding four miles an hour.

The plaintiff and some witnesses in his behalf judged the speed of the train was twelve to fifteen miles an hour. If the defendants were running their train upon such a locality at the rate as stated by the plaintiff, were they exercising due care? But if their speed did not exceed four miles, as testified to by the witnesses for the defense, and sounded their whistle in the ordinary way, were they or not still guilty of negligence?

Two other witnesses have corroborated the engineer as to the blowing of his whistle at the point indicated and state that he also rang the bell as usual. The old colored man testified that plaintiff, as he approached the crossing, was driving at a rapid rate parallel with and alongside of the train until both struck the crossing and came into collision.

It was also proved that immediately thereafter there was some conversation among the party who had escaped from the wagon about the cock fight, and inquiry was made as to the safety of the cocks, when some one rescued them from the disabled wagon and exhibited them, to the joy of the party.

The question of negligence on the part of either the plaintiff or defendant, or both, is for your consideration. If you find that both parties were exercising ordinary care when the collision occurred, it must be regarded as *per infortuniam,* and neither would be responsible to the other; or if both were guilty of rashness, then neither can take advantage of his own carelessness. If you conclude to find for the plaintiff, then you will consider the question of damages. He states that he lost his wagon and horse and paid a medical bill amounting to about eleven dollars, and was compelled for some three or four weeks whilst he was laid up to employ assistance at the rate of nine dollars per week. The complaint demands damages to the amount of $1,500. This is not a case, however, for vindictive damages; but if you conclude that plaintiff should recover, you will determine as to the amount and write your verdict accordingly. Otherwise you will find for the defendant.

To which refusal to charge as requested, and to the instructions granted, defendants, by its counsel, then and there, before the jury had withdrawn, excepted.

The jury having retired returned the following verdict, viz.: "We find for the plaintiff eight hundred and fifty dollars."

The defendants appealed.

*Simonton & Barker,* for appellants.

*Simons & Seigling,* contra.

July 1, 1876. The opinion of the Court was delivered by

WILLARD, A. J. The counsel for defendants requested the Court to charge "that in absence of special circumstances making it necessary, it is under no obligation to stop its engines and trains at the crossing of a public highway." The Court declined so to charge, and the counsel for defendants excepted. This proposition is somewhat obscure from the use of the word "stop." To stop ordinarily signifies to cease from some particular motion, although it is sometimes used in a loose sense as equivalent to slackening speed. In either sense the proposition is correct, and if involved in the case ought to have been charged.

The charge of the Court appears to us to be in some respects inconsistent with the terms of the proposition just stated, and to that extent erroneous.

The Court charged as follows: "The plaintiff and some witnesses in his behalf judged the speed of the train was twelve or fifteen miles an hour. If the defendants were running their trains upon such a locality as stated by the plaintiff, were they exercising due care?" The effect of this charge was clearly to convey to the jury the idea that they were at liberty to consider running at that rate, at that locality, to be in itself negligence. It is possible that the case in their minds may have turned on this proposition. The question is then fairly raised whether such construction was correct.

The evidence shows that at the place in question the railroad crossed a public highway. ' It does not appear that such crossing was in the compactly built portion of a city. It can only be considered, therefore, as the ordinary case of a highway crossed by a railroad. As to such a locality we said in this case (as reported in 5 S. C., 221, in reference to the charge upon a former trial,) that "the charge assigns as the reason of this rule that the defendants were bound to slacken their speed so as to prevent an accident occurring. This assumes that there was a legal obligation to slacken the speed of the train at the time and place of the accident. There was no such legal obligation. If they were bound to slacken their speed at that time and place it was because special circumstances existed rendering that course necessary under the rule of law imposing due and ordinary care upon the defendants. As to the existence of such a necessity, it was the duty of the jury to determine as matter of fact."

The effect of this decision was that the fact that the servants of the defendants, controlling the motion of the train, were aware that the train was approaching the crossing of a highway, placed them under no legal obligation or duty to slacken the speed of the train from its ordinary speed at other points. Consequently, negligence could not be imputed to them for failing so to do. If, however, it was brought to their knowledge, as they are reasonably chargeable with knowledge, that the train was likely to encounter an obstruction at such crossing for some special reason, then they were bound to use special means in view of such special circumstances; and as to the fitness and reasonable sufficiency of such special means the jury was competent to judge.

The foundation of negligence is some legal duty or obligation. As to the existence of such obligation the Court judges. Where the obligation is of a general nature that may be satisfied in a

variety of modes. The jury judges of the reasonable propriety of the means adopted for conforming to its requirements. A jury is as much bound to keep themselves within the limits of the law in determining an issue of negligence as in passing upon any other issue of fact, and the Court ought to see that they are instructed as to the nature of the legal duty laying at the foundation of the charge of negligence whenever specifically requested so to do.

There was no evidence in the case that justified the jury in finding that there was negligence in the mere fact of the speed at which the train was running at the time and place of the occurrence. The charge doubtless created an opposite idea in the minds of the jury which may have influenced their conduct, and for this reason there ought to be a new trial.

*Moses,* C. J., and *Wright,* A. J., concurred.